**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

**July 20, 2026**

**Christopher M. Wolpert**
**Clerk of Court**

_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

DANIEL DAVID EGLI,

    Defendant - Appellant.

No. 25-4107
(D.C. No. 2:22-CR-00210-TC-1)
(D. Utah)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **TYMKOVICH**, **McHUGH**, and **FEDERICO**, Circuit Judges.
_____

Daniel David Egli appeals pro se from his conviction and sentence for

possessing child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B).  Exercising

jurisdiction under 28 U.S.C. § 1291, we affirm.

I

Since 2004, Egli has twice pleaded guilty to possessing child pornography.  In

between prison terms (51 and 120 months, respectively), he repeatedly violated the

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal.  *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is therefore
ordered submitted without oral argument.  This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel.  It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

conditions of his supervised release by searching for child pornography and viewing and possessing adult pornography. As a result, Egli is subject to a lifetime of supervised release and an absolute ban on accessing the internet. *See United States v. Egli*, 13 F.4th 1139, 1141, 1149 (10th Cir. 2021).

Most recently, in 2021, Egli's probation officers went to his parents' home, where he lived. In his room, officers discovered a prohibited flash drive plugged into his television, a laptop under his bed, several storage drives, and an unauthorized cell phone. Both the laptop and cell phone were connected to adult pornography sites. Officers seized the devices, and an FBI forensics analysis revealed the laptop contained child pornography. Officers obtained a warrant for Egli's arrest, and when they returned to his parents' home, they discovered additional storage drives and a desktop computer. The storage drives were encrypted and largely inaccessible. But an FBI forensics analysis determined the computer contained child pornography. In all, investigators found 496 files of child pornography on Egli's laptop and computer. Many of the files had explicit names that described their content, and investigators were able to determine which of them had been recently opened.

Investigators also discovered Egli solicited naked pictures of an email correspondent's 13-year old daughter, downloaded erotic literature describing incest and pedophilia, and described himself as an "incestuous pedophile," R. vol. I at 509. Additionally, they discovered he was a website administrator for a platform called "the Pedophile Nation Project" or "the Pedophile Safe Haven Project." *Id.* at 519. This platform enabled pedophiles to "commiserate with one another about how they

2

are being persecuted" and to proclaim "the laws are wrong and that there shouldn't be anything wrong about engaging in sexual activity with children." *Id.* at 521.

Based on this and other evidence, a grand jury indicted Egli for possessing child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B). Before trial, he moved to represent himself. At a hearing, a magistrate judge warned Egli against proceeding pro se, underscoring the difficulties he would face going to trial without an attorney. Egli insisted on representing himself and assured the magistrate judge, "My resolve is unchanged," "[i]f it doesn't work out, I have no one to blame but myself." *Id.* at 48. The magistrate judge emphasized Egli's decision was "unwise," *id.* at 57, but he knowingly and voluntarily waived his right to counsel, so he could represent himself, though his public defender would serve as standby counsel.

As the trial approached, the government filed three motions in limine seeking to 1) admit statements Egli made to his probation officers, 2) prohibit him from telling the jury his potential sentence, and 3) disclose his two prior convictions for possessing child pornography. The district court continued the trial for six months to allow Egli time to respond to the motions in limine. Although it did not grant all of his requests for extensions and continuances, it did grant some of his requests to permit him to file other pleadings and to prepare for trial. It also contacted his place of confinement to ensure he had access to legal materials.

At trial, the government called Egli's probation officer, a computer forensics examiner, and the FBI agent assigned to the case. Egli testified in his own defense and acknowledged most of the evidence, including his prior convictions. But he

3

insisted he did not know there was child pornography on the devices. The jury rejected that theory and convicted him of knowingly possessing child pornography.

Before sentencing, Egli requested that standby counsel be appointed for sentencing. The district court granted his request, and his attorney sought two psychological evaluations to assist with sentencing and treatment options. Those evaluations diagnosed Egli with Autism Spectrum Disorder.

Ultimately, the district court sentenced Egli to 210 months in prison, followed by a consecutive 24-month term for violating the conditions of his supervised release. The district court reiterated that Egli would serve a term of supervised release for the rest of his life.

Egli now contends: 1) he was not competent to waive counsel and represent himself; 2) he was denied due process and his right of access to the courts by the denial of his requests for continuances and extensions of time; 3) the indictment was insufficient, it was constructively amended at trial, and there was insufficient evidence to support his conviction; and 4) standby counsel rendered ineffective assistance. We consider each argument in turn.[1]

---

[1] We liberally construe Egli's pro se materials but do not advocate on his behalf. *See Garrett v. Connor Maddux Janer*, 425 F.3d 836, 840 (10th Cir. 2005).

II

*A.  Competence to Waive Counsel*

Egli first contends the district court should not have allowed him to waive his right to counsel because he was incompetent to represent himself.  The Sixth Amendment affords a criminal defendant the right to represent himself.  *Faretta v. California*, 422 U.S. 806, 819-23 (1975).  But because it also affords a defendant the right to counsel, the court must ensure a waiver of counsel is "intelligent and voluntary."  *Godinez v. Moran*, 509 U.S. 389, 402 (1993).  "[A] defendant . . . should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that he knows what he is doing and his choice is made with eyes open."  *Faretta*, 422 U.S. 835 (internal quotation marks omitted).

We evaluate the validity of a defendant's waiver of counsel by asking first, whether the district court ensured the defendant was competent to waive his right to counsel, and second, whether the waiver was knowing and voluntary.  *United States v. DeShazer*, 554 F.3d 1281, 1288 (10th Cir. 2009).  Egli does not dispute his waiver was knowing and voluntary, and the record confirms he did indeed knowingly and voluntarily waive his right to counsel.  The magistrate judge engaged in "a thorough and comprehensive formal inquiry including topics such as the nature of the charges, the range of punishment, possible defenses, and a disclosure of the risks involved in [Egli] representing [him]self pro se."  *Id.* (internal quotation marks omitted).

Egli challenges the first inquiry, however, asserting the district court should have *sua sponte* ordered a competency evaluation, which he says would have

5

disqualified him from representing himself.  He tells us his pre-sentencing psychological evaluations "revealed profound mental health and cognitive impairments that directly bear on [his] capacity for self-representation."  Aplt. Opening Br. at 22.  He says this evidence demonstrates he "lacked the mental wherewithal, cognitive capacity, and emotional regulation required for effective self-representation."  *Id.* at 25.

We review this argument only for plain error because Egli did not raise it below or object during the *Faretta* colloquy.  *See DeShazer*, 554 F.3d at 1288.  "Plain error occurs when there is (1) error, (2) that is plain, which (3) affects substantial rights, and which (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings."  *Id.* (internal quotation marks omitted).

Egli's argument confuses the standard of competence required to waive his right to counsel with the standard of competence required to represent himself.  "[T]he competence that is required of a defendant seeking to waive his right to counsel is the competence to *waive the right*, not the competence to represent himself."  *Godinez*, 509 U.S. at 399.  "[W]e have made clear that the level of competency required to waive the right to counsel is the same as the level of competency to stand trial."  *DeShazer*, 554 F.3d at 1289.  The district court is not "required to make a competency determination in every case in which a defendant seeks to . . . waive his right to counsel. . . .  [A] competency determination is necessary only when a court has reason to doubt the defendant's competence."  *Godinez*, 509 U.S. at 401 n.13.

6

There was no basis for doubting Egli's competence to stand trial and waive his right to counsel. During the *Farreta* colloquy, Egli confirmed that he understood he had the constitutional right to a lawyer and that he was not taking any medications or substances that affected his ability to think, concentrate, or listen. R. vol. I at 45. Although he insists his pre-sentencing psychological evaluations indicate he was incompetent, that evidence did not exist before the trial, and in any event, Egli told the magistrate judge he did not "have any medical conditions that affect [his] ability to think," "concentrate," or "listen." *Id.* at 45-46. Egli also confirmed he understood he was charged with possessing child pornography and that he faced a mandatory minimum of ten years in prison, "probably more." *Id.* at 48. Egli speculated that he faced 12 to 14 years in prison, but the magistrate corrected him and advised that he faced a minimum of 10 years to life in prison.

Based on Egli's responses during the colloquy, the magistrate judge remarked, "I can tell you're a bright, rational person and in having this exchange you have to be able to understand that there are some gaps on your end that [defense counsel] doesn't have." *Id.* at 57. Egli replied, "I do understand, Your Honor," *id.*, yet he insisted on representing himself. Egli now says in hindsight there were "observable signs of disorganized thinking," Aplt. Opening Br. at 21, but the record refutes that assertion.

For example, just days before trial, Egli requested a hearing and sought a five-month continuance, claiming he had "terrible memory problems." R. vol. I at 963. But when the district court asked standby counsel if Egli was competent or should be

7

evaluated, standby counsel replied, "No, I think he is competent." *Id.* at 967. Standby counsel explained that Egli is "an articulate writer" who "is not very organized." *Id.* at 966-67. Egli himself stated he did not feel prepared for trial, not that he was incompetent. The district court therefore denied a continuance but offered to order a competency evaluation. Neither Egli nor standby counsel accepted the offer. Later, during the trial, Egli moved to have standby counsel appointed as his attorney, but in denying that request, the district court observed he did not contend his waiver of counsel was defective and he "responded intelligently" throughout the *Farreta* colloquy. *Id.* at 234. The district court noted Egli merely changed his mind. This record confirms the district court did not err in accepting his waiver of counsel without *sua sponte* ordering a competency evaluation.

*B. Access to Courts*

Egli next contends the district court denied him due process and his right to access the courts by denying him extensions of time to file responses and reply briefs. He argues he needed extra time because he was in jail, but the district court repeatedly struck his pleadings as untimely, which left the jury hearing only from the government that he repeatedly violated his conditions of supervised release and "defied his probation officer." Aplt. Opening Br. at 30 (internal quotation marks omitted). Egli also comments, albeit only in the heading of his argument, that prison officials denied him his legal mail and other legal materials.

We review Egli's contentions de novo. *See United States v. Cooper*, 375 F.3d 1041, 1051 (10th Cir. 2004). To the extent he argues prison officials denied him his

8

legal mail and legal materials, the record shows the district court called the jail to ensure he had access to his legal mail and the government's documents. The jail confirmed that counsel for the government had hand-delivered its discovery and briefs. *See* R. vol. I at 238-39. Egli cites nothing in the record to suggest otherwise.

To the extent Egli contests the denial of continuances and extensions, the record refutes that contention as well. The district court granted a six-month continuance to allow Egli to respond to the government's motions in limine. The district court also granted a six-week continuance for trial preparation. Thereafter, it eventually granted him a two-month extension to file a surreply to the motions in limine. Although the district court denied his request for another continuance and set a trial date—September 23, 2024—Egli brought two interlocutory appeals that we dismissed for lack of prosecution, which delayed the trial for another month. And at a pretrial conference Egli requested yet another continuance, which the district court also denied. Then, five days before trial, Egli requested a five-month continuance, which the district court denied as well. Even with these denials, more than three years and five months passed between Egli's arrest in May 2021 and his trial in October 2024. All things considered, the district court's refusal to further delay the trial violated neither Egli's due process rights nor his right of access to the courts.

## C. Sufficiency of the Indictment & Evidence

Next, Egli contends his indictment was insufficient and constructively amended by the trial evidence, which itself was insufficient to support his conviction. We reject all three arguments.

*1. Sufficiency of Indictment*

We review the sufficiency of the indictment de novo and reverse only if an inadequacy prejudiced the defendant. *United States v. Sweet*, 107 F.4th 944, 956 (10th Cir. 2024). "An indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Id.* at 958 (brackets and internal quotation marks omitted). "It is generally sufficient that an indictment set forth the offense in the words of the statute itself." *Id.* (ellipsis and internal quotation marks omitted).

Egli's statute of conviction, § 2252A(a)(5)(B), prohibits any person from "knowingly possess[ing], or knowingly access[ing] with intent to view, any . . . child pornography. . . ." His indictment tracks this statutory language:

COUNT I
Possession of Child Pornography
(18 U.S.C. § 2252A(a)(5)(B))

Beginning on a date unknown and continuing through May 17, 2021, in the District of Utah,

DANIEL DAVID EGLI

defendant herein, did *knowingly possess and access with intent to view any material which contains an image of child pornography*, as defined in 18 U.S.C. § 2256(8), that had been mailed, shipped, and transported in interstate and foreign commerce by any means, including by computer, and which images were produced using materials that had been mailed, shipped and transported in and affecting interstate and foreign commerce, including by computer, and attempted to do so; all in violation of 18 U.S.C. § 2252A(a)(5)(B).

R. vol. I at 28-29 (emphasis added). Egli's indictment not only tracks the statute, it also "includes the date, place, and nature of the illegal activity," *Sweet*, 107 F.4th at 958 (internal quotation marks omitted). Nothing more was required.

## 2. *Constructive Amendment*

Egli also contends the evidence adduced at trial constructively amended the indictment because, he says, it showed he violated his conditions of supervised release, not that he committed a new substantive offense. We disagree.

"A constructive amendment occurs when the district court's instructions and the proof offered at trial broaden the indictment" by "modif[ying] essential elements of the offense charged such that there is a substantial likelihood that the defendant may have been convicted of an offense other than the one charged in the indictment." *United States v. Koerber*, 10 F.4th 1083, 1116 (10th Cir. 2021) (brackets and internal quotation marks omitted). It is Egli's burden to show both that a variance from the indictment occurred and that it was fatal. *Id.*

Egli fails to carry his burden. He does not address the jury instructions or the evidence, but the instructions required the government to prove Egli "knew from all the circumstances that the material contained depictions of minors engaging in sexually explicit conduct," R. vol. I at 888-89. The instructions defined "knowingly" to mean he "knew that the . . . images constituted child pornography" and he "was consci[ous] and aware of his actions, realized what he was doing or what was happening around him and did not act because of ignorance, mistake or accident."

11

*Id.* at 887-88.  And as we explain next, the evidence presented at trial was sufficient to establish that he did knowingly possess child pornography.

### 3.  *Sufficiency of Evidence*

We review the sufficiency of the evidence *de novo*.  *United States v. Dias*, 174 F.4th 1266, 1279 (10th Cir. 2026).  "It is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial," so our review is "highly deferential."  *Id.* (internal quotation marks omitted).  We ask whether, "viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Id.* (internal quotation marks omitted).

We have little difficulty concluding the evidence was sufficient to sustain Egli's conviction.  It was undisputed he possessed 496 files of child pornography.  *See* R. vol. I at 599 ("I acknowledge that these images were there.").  His defense was that he did not knowingly possess the files, although he acknowledged that as he looked through the adult pornography he downloaded, "an image of child pornography would unexpectedly pop up," which he would delete.  *Id.* at 599-600.  He explained that he would look at the child pornography files on his computer, realize he did not want it, and delete it, demonstrating it was all accidental.  *Id.* at 600-01.  But he never told his probation officer or therapist, even though this happened "probably about 4—to 500 times."  *Id.* at 602.

Additionally, the jury heard evidence that Egli downloaded erotic literature describing pedophilia and incest, that he solicited nude photos of a 13-year old girl

from an email correspondent, and that he was the website administrator for the

"Pedophile Nation Project," *id.* at 519.  The jurors heard that he sent an email stating,

"I know many people think I am wrong to want this, but I truly believe that

consensual incest can be a wonderful thing."  *Id.* at 507.  And as is authorized by

Federal Rule of Evidence 414, the jury heard that Egli twice had been previously

convicted for possessing child pornography.  Taken in the light most favorable to the

prosecution, this evidence was sufficient to permit a rational jury to find the essential

elements of the crime beyond a reasonable doubt.

   *D. Ineffective Assistance of Standby Counsel*

   Finally, Egli contends standby counsel rendered ineffective assistance by,

among other things, failing to prevent jail officials from interfering with his legal

mail, failing to object when the district court struck his pleadings, and failing to raise

his competency at sentencing.  These arguments are unavailing.

   When a defendant elects to proceed pro se and "standby counsel is appointed,

the primary concern is that appointed counsel does too much, so as to abrogate the

*Faretta* right to self-representation, not too little"  *Simpson v. Battaglia*, 458 F.3d

585, 597 (7th Cir. 2006).  Indeed, "the objectives underlying the right to proceed

*pro se* may be undermined by unsolicited and excessively intrusive participation by

standby counsel."  *McKaskle v. Wiggins*, 465 U.S. 168, 177 (1984).  Therefore, a

defendant who chooses to proceed pro se cannot succeed on an ineffective assistance

claim against standby counsel so long as he maintained control over his own defense.

*See Simpson*, 458 F.3d at 597 ("[T]he inadequacy of standby counsel's performance,

without the defendant's relinquishment of his *Faretta* right, cannot give rise to an ineffective assistance of counsel claim under the Sixth Amendment."); *see also United States v. Morrison*, 153 F.3d 34, 55 (2d Cir. 1998); *United States v. Schmidt*, 105 F.3d 82, 90 (2d Cir. 1997); *Lee v. Hines*, 125 F. App'x 215, 217 (10th Cir. 2004) (unpublished) ("A defendant who chooses to represent himself and has the assistance of court appointed standby counsel cannot succeed in establishing ineffective assistance against such counsel when it is clear that the defendant maintained control of his defense.").[2]  Egli elected to proceed pro se, and he maintained control of his own defense through the trial.  He cannot now complain that standby counsel was ineffective for failing to intervene.

To the extent Egli claims standby counsel was ineffective at sentencing, after the district court reappointed standby counsel to represent him, Egli's claim must be brought in collateral proceedings.  *See United States v. Poterbin*, 162 F.4th 1254, 1265-66 (10th Cir. 2025) (explaining that ineffective assistance of counsel claims generally are not reviewed, and are "presumptively dismissible," on direct appeal to permit factual development of the record (internal quotation marks omitted)).

## III

The district court's judgment is affirmed.

Entered for the Court

Timothy M. Tymkovich
Circuit Judge

---

[2] Unpublished decisions may be cited for their persuasive value.  *See* Fed. R. App. P. 32.1(A); 10th Cir. R. 32.1